THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
*v.* EARL V. B. VON BRANDENBURG, Appellant.

Crimes — grand larceny by false representations — trial — result of jury trial should not be disturbed unless substantial principle of law has been violated — crime of grand larceny complete when complainant parted with money relying upon false representations deliberately made by defendant — gift thereafter to complainant of certificates of corporate stock immaterial — evidence of solvency of another corporation organized by defendant immaterial and irrelevant — instructions to jury.

1. Things said and done in the pull and push of a jury trial should not disturb the result unless some substantial principle of law has been violated.

2. Where upon the trial of an indictment charging grand larceny by false representations it is conclusively proved that the representations were made by the defendant as charged; that they were false and known to be false and that the complainant relying upon them parted with a valuable consideration, the fact that the defendant or his agents may have thereafter given to complainant certain certificates of stock is immaterial to the charge. The crime was complete when complainant parted with his money relying upon false representations deliberately made to cheat him.

3. Where the stock given to complainant was that of a New York corporation the solvency of a similar corporation organized by defendant in another State or the amount of its assets was immaterial and irrelevant and was properly excluded from the evidence.

4. A statement by the trial justice that if complainant bought stock in the foreign corporation as distinguished from the New York stock, the action would not lie, was error, but in favor of defendant, and where in the main charge he in substance repeated the statement, but when the jury came in for instructions told them in substance that while he left it open for them to decide whether complainant bought foreign or New York stock, yet if he did purchase foreign stock the defendant, nevertheless, would be guilty, if complainant was induced to buy it by reason of the alleged false representations, this statement also was too favorable to the defendant and he cannot complain of it. Whichever stock was purchased or received was of

no consequence, but assuming that the judge was right in favoring the defendant by leaving the nature of the purchase as an open question for the jury he was at the same time right regarding his conclusion.

*People* v. *von Brandenburg*, 208 App. Div. 840, affirmed.

(Argued June 8, 1925; decided October 6, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 17, 1924, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York, convicting the defendant of the crime of grand larceny in the second degree.

*J. Edward Murphy* for appellant. Under the Code of Criminal Procedure and the authorities construing the section, the indictment must not only charge the crime, but must allege the facts constituting the crime, and cannot be sustained by proof that the crime was committed by different means. (Code Crim. Pro. §§ 275–279; *People* v. *Foster*, 60 Misc. Rep. 3; *People* v. *Tvartorara*, 76 Misc. Rep. 55; *People* v. *Sanborn*, 14 N. Y. S. R. 123; 117 N. Y. 625; *People* v. *Dunn*, 53 Hun, 381; *People* v. *Blanchard*, 90 N. Y. 319.) If the defendant was called to answer an indictment using exactly the same language, except that the words " Philadelphia New Method Molding and Metal Corporation " were employed in lieu of the words " New York New Method Molding and Metal Corporation " the present indictment and judgment of conviction thereon could not be successfully used by the defendant in bar. (*People* v. *Livingston*, 47 App. Div. 283; *People* v. *Santoro*, 229 N. Y. 277; *People* v. *Grzesczak*, 77 Misc. Rep. 202; *People* v. *Warren*, 1 Park. Cr. R. 338.) After having, upon the trial, on objection of the district attorney, and under defendant's exception, excluded the evidence offered by the defendant of the assets, investments and market value of the Philadelphia

Company stock, and after having in the main charge instructed the jury they should acquit the defendant if they found complainant purchased stock of the Philadelphia Company instead of the New York Company, it was prejudicial error on the part of the trial court to have reversed this settled rule of law upon which the trial was conducted, and instructed the jury in effect that they should not acquit the defendant even if they found that complainant witness bought stock of the Philadelphia Company instead of the New York Company. (*People* v. *Bliven*, 112 N. Y. 79; *People* v. *Dumar*, 106 N. Y. 502.) The trial court erred in excluding the competent evidence offered by the defendant, of the assets, investments and market value of the stock of the Philadelphia Company, and the burden is on the People to show that the error was harmless. (*People* v. *Smith*, 172 N. Y. 210.)

*Joab H. Banton, District Attorney (Michael J. Driscoll* of counsel), for respondent. The New York New Method Molding and Metals Corporation had no mining rights in Pavilion Hill, S. I., and had not the sole and exclusive right to the Hoffman process. A misrepresentation of such facts warranted a verdict of guilty. (*Morgan* v. *Skiddy*, 62 N. Y. 319.) The exclusion of the assets of the Philadelphia New Method Molding and Metals Corporation by the trial court presented no error. (*People* v. *Barry*, 132 App. Div. 231; 196 N. Y. 507.) The trial court committed no error in the charge to the jury. (*People* v. *Geyer*, 196 N. Y. 364; *Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y. 282; *People* v. *Fiorentino*, 197 N. Y. 566; *People* v. *Turley*, 153 App. Div. 673.)

CRANE, J. The defendant has been convicted of grand larceny in the second degree, and the judgment of conviction has been unanimously affirmed by the Appellate Division. There remain, therefore, for our consideration

only such alleged errors as are presented by exceptions to the rulings of the trial court. · The only matter calling for discussion is a criticism of the charge which it is said must have misled the jury.

To understand the remarks of the trial justice and appreciate this criticism, it will be necessary to review the principal facts of the case.

The indictment charges grand larceny by false representations made to one William A. Thunhorst, whereby he parted with his money. The representations were that a certain corporation, known as the New York New Method Molding and Metal Corporation, had certain mining rights in lands owned by one William A. Maxwell, at Pavilion Hill, Staten Island, New York; that there had been discovered a rich vein of asbestos in said lands, which was of a kind suitable for making molds withstanding an enormous heat; that certain photographs were produced by the defendant, and exhibited to Thunhorst, purporting to show a shaft leading into the asbestos mines in said lands; and it was further represented that the said company had rights to a certain secret process for making asbestos molds, known as the Hoffman process.

The unanimous affirmance by the Appellate Division is conclusive in this court to the effect that these representations were made by the defendant; that they were false, and known to be false; and that Thunhorst, relying upon them, parted with $100.

One William N. Hoffman had a secret process for making asbestos molds. The defendant, Earl V. B. von Brandenburg, was general manager of the Eastern Bond and Security Company, a trade name under which he did business. Hoffman made an agreement·with von Bradenburg, or his company, whereby the defendant was to incorporate, under the laws of the State of Delaware, a company to be known as the New Method Molding and Metals Company, consisting of one million shares. Hoffman

was to have 510,000 shares of this company, and was to place in escrow the formula of his asbestos process until he got some cash. The cash was to be raised by the defendant, von Brandenburg, or his Eastern Bond and Security Company. For this purpose, it was agreed in writing between Hoffman and the defendant that the latter should give sixteen promissory notes of $10,000 each, amounting in all to $160,000, payable to the new corporation, in exchange for stock. The asbestos formula was not to be given up until the notes were paid.

Up to this point everything was paper; no tangible assets in the asbestos company.

The geographical territories of the United States were divided into eighteen districts, and the defendant was to incorporate a company in each district consisting of a million shares at the par value of one dollar per share. Each of the companies was to pay in to the parent Delaware Company a certain portion of its stock for the right to use the asbestos process in its district. Pursuant to this plan, a subsidiary corporation, known as the New York New Method Molding and Metal Corporation, was organized under the laws of the State of Delaware, consisting of one million shares of a par value of one dollar. A like corporation, known as the Philadelphia New Method Molding and Metals Corporation, was also created. These companies hereafter will be referred to as the New York Company and the Philadelphia Company.

All that these two subsidiary companies had to represent the one million capital stock each was the right to use the secret asbestos formula in the company's particular territory, upon turning over a portion of its stock to the parent Delaware Company.

The secret formula, or process, was in the custody of a bank in Buffalo, waiting the payment of the sixteen promissory notes of the defendant made by his security company. Until the Delaware Company, of which

Hoffman, the owner of the process, was president, received $160,000, he was not going to give up the formula, or permit the company or companies to use it. The right to the asbestos molding formula was the principal, or only, asset of all these companies. Without it, business could not be done.

The money was never paid. The first two notes went to protest, and the right to possess and use the formula never came into existence. The stock, therefore, of the parent Delaware Company, the New York Company, and the Philadelphia Company became just so much valueless printed paper. The Philadelphia Company had sold some of its stock, and apparently had the cash or its equivalent. The purpose of its incorporation, however, so far as this case goes, was at an end, through failure of the defendant to keep his agreement with Hoffman.

The defendant, however, kept on selling the stock. He had an office in New York City where he sold the paper of all these companies, knowing that he and they had forfeited rights to the formula, and particularly that the New York Company owned no asbestos mines.

At this point it is well to note that the defendant is not charged with having sold stock in the New York Company by means of false representations. Nothing is said about stock in the indictment. The charge is that he obtained $100 from William A. Thunhorst by falsely representing that the New York Company owned asbestos mines at Staten Island, and had the right to manufacture the asbestos into molding machinery. The defendant, or his agents, showed Thunhorst a farm on Staten Island on which they said was a vein of asbestos owned by the New York Company; and they showed him photographs of the shaft leading into the asbestos mines. This shaft turned out to be a part of the road, a highway on Staten Island. There were no asbestos mines at the

place indicated, and the New York Company had no rights to any such properties.

That the defendant, or his agents, may have given to Thunhorst certificates of stock in any company thereafter, is entirely immaterial to the charge. The crime was complete when Thunhorst parted with his money, relying upon false representations deliberately made to cheat him. When the defendant had the complainant's money, he sent him in August of 1919 a certificate of stock. His letter reads as follows:

" DEAR MR. THUNHORST:

" Herewith please find your certificate for 50 shares. Do not forget to mail in the receipt.

" EASTERN BOND AND SECURITIES CO.
" E. V. B. VON BRANDENBURG,
" *General Manager.*"

The inclosed certificate reads as follows:

| " Full Paid and Non-Assessable | " Number 196 | " Shares 50 |
|---|---|---|

" CAPITAL STOCK, $1,000,000

" NEW YORK NEW METHOD MOLDING AND METALS
" CORPORATION

" *This is to Certify* that William A. Thumhorst is the owner of .... Fifty .... Shares of the Capital Stock of

NEW YORK NEW METHOD MOLDING AND METALS
CORPORATION

transferable only on the books of the Company by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

" *Witness* the seal of the Company and the signatures of its duly authorized officers, affixed this Fourth day of August 1919

" G. FREDERICK MUNNS JR.    FRED PERLE
" *Secretary*                    *Vice*
" *Treasurer*                    *President* "

1925.]                    Opinion, per CRANE, J.          [241 N. Y. 128]

It was 50 shares of the New York stock which were delivered to Thunhorst. He became a stockholder in the New York Company. Of this there can be no question. The undisputed fact cannot be changed or gainsaid by the circumstance of giving Thunhorst in July a receipt for a two-dollar installment on which was stamped with a rubber stamp the words "Philadelphia New Method and Molding Corporation." The defendant was out to sell the stock of these various companies, and to get money by this means. As all the stock was equally valueless, it made little or no difference which was given to the customer, whether the receipt was stamped "Philadelphia Company," "New York Company," or "Delaware Company." Thunhorst subsequently received the stock of the New York Company, and there was never any claim that this was a mistake. There could not be a mistake if Staten Island figured in the transaction, as this was not within the territory of the Philadelphia Company.

The underlying facts of this case, which must be fully understood before we come to the charge of the trial justice, are: That Staten Island was within the territory of the alleged New York corporation; that the false representations regarding ownership of asbestos mines on Staten Island, and the right to use the Hoffman process by the New York Company, was the inducing cause for giving the defendant $100; that for this $100 Thunhorst received stock in the New York Company, and became a stockholder therein, and not in the Philadelphia Company; that even if he had received no stock, or had purchased the Philadelphia stock, or had been given a certificate of health, a certificate of birth, or anything else, it would have no material bearing upon this case, and could not wipe out a crime already committed. The crime charged was not the purchase of valueless stock about which there had been false representations; the crime charged was the procuring of

$100 by false representations regarding ownership and rights of a New York corporation. What, therefore, was given after the obtaining of the money was of no consequence, provided, of course, that the money was obtained by the false representations alleged.

The solvency of the Philadelphia Company, or the amount of its assets, was, therefore, immaterial and irrelevant, and was properly excluded from the evidence by the trial justice. Much that was said during the trial may have been unnecessary, and may have indicated that the trial justice was wavering somewhat in his own mind regarding the nature of the case and the point of view of the prosecution; but the fundamental facts, as I have above stated them, were always in mind and fairly presented to the jury.

So long as we have jury trials, many things will be said and done, in the pull and push of the contest, which on a calm review will be considered unnecessary and unwise. These matters, however, should not disturb the result unless some substantial principle of law has been violated.

During the course of the trial the judge stated, somewhat unnecessarily, and apparently without then fully appreciating the full scope and meaning of the charge, that if the complainant bought Philadelphia stock, as distinguished from New York, the action would not lie. What I have already stated is sufficient to show that in this particular the judge was in error. The error, however, would have been in favor of the defendant, if there had been any evidence that Thunhorst had purchased Philadelphia stock. As the evidence was conclusive that he had purchased New York stock, the statement was meaningless. The justice might just as well have said the action would not lie if the complainant had bought sheep. The judge in this case would have been justified in charging as a fact that Thunhorst paid $100 and received New York stock,

and became a stockholder in the New York Company. There was no question of fact on this point to be left to the jury.

However, in his main charge, he in substance repeated the statement made during the trial, that if Thunhorst bought Philadelphia stock, the defendant was not guilty. But when the jury came in for further instructions, the judge modified his charge in this particular, and told them in substance that while he left it open for them to decide whether Thunhorst bought Philadelphia or New York stock, yet if he did purchase Philadelphia stock, the defendant, nevertheless, would be guilty, if Thunhorst was induced to buy it by reason of the false representations of the defendant as alleged. Even this statement was too favorable to the defendant. He cannot complain of it. Whichever stock was purchased or received is of no consequence, as I have stated. The gravamen of the complaint was the false representations above mentioned. Assuming, however, that the judge was right in thus favoring the defendant by leaving the nature of the purchase as an open question for the jury, he was at the same time right regarding his conclusion. If Thunhorst bought Philadelphia stock, or was induced to buy it by reason of the false representations made regarding asbestos mines on Staten Island, and rights to use the asbestos formula, the crime alleged was proved. His folly in relying on such representations is no defense; it is the inducement to the crime.

What Thunhorst got for his hundred dollars in the form of printed paper is immaterial. Whatever confusion was created by the methods and schemes of the defendant, cannot be pressed into law points by able counsel, to keep him from the force of the facts. A rubber stamp cannot make true that which is essentially false. Thunhorst was a stockholder in the New York Company. He purchased New York stock, and got it. The consequences which might follow " if " Thunhorst bought

Philadelphia stock was of no importance and entirely immaterial. " If " makes no difference when there cannot from the nature of things be any " if."

The judgment of conviction appealed from should be affirmed.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, ANDREWS and LEHMAN, JJ., concur; POUND, J., absent.

Judgment of conviction affirmed.